

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

This Opinion
Overrules Opinion
#o-1577

Honorable J. W. Calhoun
Comptroller of the University of Texas
Austin, Texas

Dear Sir:

Opinion No. O-1861
Re: Whether or not the property
held by the Board of Regents
of the University of Texas
for the use and benefit of
the University for specific
purposes donated to the Uni-
versity by George Beggs and
Mike Hogg is exempt from
taxation.

Under date of January 15, 1940, Honorable Dan W. Jackson requested that we reconsider our opinion No. O-1577, wherein we held that the property mentioned therein was exempt from taxation. We are addressing our reply to you and sending a copy to Mr. Jackson.

After further consideration of the opinion as written we are still of the opinion that the same is correct in its conclusion, but that the reasons given in that opinion would likely lead to confusion. We are therefore reconsidering the question, and the opinion here written shall be in lieu of opinion No. O-1577.

On December 30, 1938, George Beggs, as Executor and Trustee under the will of Edward Disney Farmer, deceased, conveyed to the Board of Regents of the University of Texas for the use and benefit of the University, certain land in the City of Fort Worth. The title and possession of the University of Texas to this property was confirmed by a decree of the 126th District Court, Travis County, Texas, on May 31, 1939, in Cause No. 61,847, styled State of Texas, et al vs. George Beggs.

At the First Called Session of the 41st Legislature, Chapter 25, page 59 of the Acts thereof, the Legislature established the "E. D. Farmer International Scholarship Fund,"

Honorable J. W. Calhoun, Page 2

and provided that it should be administered by the Board of Regents of the University of Texas.

The Act of the Legislature establishing the "E. D. Farmer International Scholarship Fund" provided that the fund should be used for the purpose of providing scholarships in the University of Texas to students from the Republic in Mexico, and providing scholarships in the National University of Mexico to students of the University of Texas.

The property conveyed by said George Beggs is now rented by the Board of Regents for garage purposes, and the revenue therefrom is placed to the credit of the "E. D. Farmer International Scholarship Fund."

The property conveyed by Mike Hogg, as Independent Executor of the estate of W. C. Hogg, deceased, et al, consists of real estate, mineral rights, oil royalties, bonds, notes, shares of stock and other property which constituted the residue of the estate of W. C. Hogg, deceased.

The will of W. C. Hogg, deceased, provided that such residue would be conveyed to:

"The Board of Regents of the University of Texas, so that said Board of Regents may devote all or as much of it as may be necessary to the endowment, establishment and maintenance of a lecture fund aimed to secure the services of men of proved learning to deliver courses or random lectures on the history, literature, art and social and political experience of mankind. The controlling purpose of this foundation should be to insure an opportunity to the University and the people of Texas for knowing what the real achievements and past experience of mankind have been. To this end, the lecturers retained by said foundation may, in the discretion of the authorities of the University, and as the income of the foundation may permit, deliver their respective addresses on invitation at any educational institution, public library, town hall, public art institute, public auditorium, etc., within the State of Texas, provided no admission be charged. I especially

Honorable J. W. Calhoun, Page 3

request that, at least during the first
three to five years of this foundation work
attention and emphasis be given by retained
lecturers of national ability and reputa-
tion to the value and service of education
and the duty and obligation of our common-
wealth and all its divisions, to establish,
equip and support adequately, if not par
excellence, all needed educational facili-
ties in keeping with the dignity and aspira-
tion of our great State."

When the Constitution of Texas was adopted, the
people of the State provided for the establishment of the
University of Texas by the adoption of Article VII, Section
10 thereof.

The Constitution also provides for the establish-
ment and maintenance of a system of free public schools by
the adoption of Article VII, Section 1, and used the phrase
"a general diffusion of knowledge being essential to the
preservation of the liberties and rights of the people,"
thereby recognizing that the education of the masses was
a function of the state government. Within nine years
after the adoption of the Constitution, the Supreme Court
recognized that education was a governmental function in
the case of Cassiano vs. Ursuline Academy, 64 Tex. 673.

The University of Texas is a department of the
state government created for the purpose of education.
Mumme vs. Marrs, 40 S. W. (2d) 31, and Oklahoma A. & M.
College vs. Miller, 52 Pac. 921. And in the case of
Cochran vs. Cavanaugh, 252 S. W. 284, Chief Justice Jones
said:

"The State University is a public insti-
tution authorized by the Constitution of the
State of Texas. . ."

The University of Texas was established by the
Act of 1881 (Ch. 75, Acts, Regular Session, 17th Legisla-
ture), and is under the control of the Board of Regents by
an Act of the Legislature, and said Board derives all of its
powers and duties from the Legislature of Texas. Article
2584 et seq. In the celebrated case of Dartmouth College vs.
Woodward, it was held that such officers were state offi-
cers. In that case, Chief Justice Marshall used the follow-
ing language:

Honorable J. W. Calhoun, Page 4

"That education is an object of National
concern, and a proper subject of legislation,
all admit. That there may be an institution
founded by the government and placed entirely
under its immediate control, the officers of
which would be public officers, amenable ex-
clusively to the government, none will deny."

In the case of Splawn vs. Woodward, 287 S. W. 657,
Chief Justice McClendon said:

"The regents are clearly officers of the
state charged with the duty of management and
control of the University and its properties."

It is, therefore, our opinion that the University
of Texas is a department of the State of Texas and is oper-
ated for the use and benefit of the public, and that its
Board of Regents are state officers. Therefore, any land
that belongs to the University of Texas is land that belongs
to the State of Texas.

The power to tax is an attribute of sovereignty
and the extent to which this power may be exercised for
governmental purposes finds its only limitation in the
Constitution. Stratton vs. Commissioners Court, 137 S. W.
1170 (writ refused). Taxation is inherent in sovereignty
and without which a constitutional government cannot
exist. It is vested in the Legislature by the general
grant of legislative power whether specifically enumerated
in the Constitution, among the powers to be exercised by
it, or not. The constitutional provisions in reference to
it, therefore, are more usually intended or understood
as limitations and restrictions upon its exercise, than
as a direct grant of the power to the Legislature. 40 Tex.
Jur. p. 21.

Taxes are defined to be the burdens, or charges,
imposed by the legislative power of the State upon persons
or property to raise money for public purposes. Clegg vs.
State, 42 Tex. 608.

The subjects of taxation under our constitutional
limitations are, primarily, property and person; and taxes
are levied by the State under its sovereign power on the
property of its citizens for governmental purposes only.

Honorable J. W. Calhoun, Page 5

Texas Employers Insurance Association vs. City of Dallas, 5 S. W. (2d) 614 (writ of error refused). The object of taxation is to produce the revenues with which to conduct the business of the state; it is entirely inconsistent with our theory of government for the property of the state to be taxed, in order to produce the money to be expended by the state. 25 Pac. (2d) 1074, State vs. Board of County Commissioners (Sup. Ct. Oklahoma).

The purpose of taxation being only for the raising of money with which to carry on the governmental functions, to tax the property of the state would only amount to taking money out of one pocket and putting it in another. As stated by Justice Bratton in the case of State vs. Locke, 30 A. L. R. 407 (Sup. Ct. New Mexico):

"All exemptions granted from taxation proceed upon the theory of public policy, but the public policy involved is not always the same. For instance, the exemptions granted by the above quoted constitutional provision to church property, public libraries, educational and charitable institutions, and cemeteries, not used and held for private or corporate profit, proceeds on the theory of the public good accomplished by them, and of the peculiar benefit derived by the public in general from their conduct. It is an act of grace upon the part of the state, which emanates from such considerations. The exemption granted to the property of the United States is perhaps compulsory; that to the state, all counties, towns, cities and school districts arises from public policy, which repudiates, as being utterly futile, the theory of the state taxing its own property in order to produce the funds with which to operate its own affairs. To tax it would merely require and render it necessary to levy new taxes to meet the demand of those already laid; that the public would thus be taxing itself to produce the money with which to pay to itself the taxes previously assessed, thereby benefiting no one except the officers employed to collect and disburse such revenues, whose compensation would merely serve to increase the burden of this useless and idle ceremony. Another consideration

Honorable J. W. Calhoun, Page 6

which should not be overlooked, is that
if public property, that is to say property
owned by the state, is to be burdened with
a tax lien the public might lose it entirely
through oversight and carelessness of its
agents in failing to pay the taxes when due,
and allowing the same to be sold and the
title passed to third parties."

Therefore, in so far as property belonging to the
state is concerned, exemption from taxation is the general
rule and not the exception. Before such property may be
subjected to taxation in any form, the intention to do so
must be declared either by express enactment or by clear
implication of law. 1 Pac. (2d) 605, Eagle Point Irrigation
District vs. Cowden, et al (Sup. Ct. Oregon).

There is nothing in our statutes which makes land
belonging to the state subject to taxation, and there is
nothing in the Constitution which by express declaration or
by implication would permit such taxation, except as will
be hereinafter noted. Of course, Article VIII, Section 1
of the Constitution provides that all property in this state
shall be taxed in proportion to its value, whether owned by
natural persons or corporations; and Article VIII, Section 11
provides that all property, whether owned by persons or
corporations, shall be assessed for taxation. While it is
true that the State has some of the attributes of a corpora-
tion, we believe that the framers of the Constitution did not
intend that the word corporation would include the state.

It is our opinion that land belonging to the state
of Texas is exempt from taxation unless there is an express
enactment to that effect. We do not have any decisions from
this jurisdiction directly on this point, but in the case of
Taylor vs. Robinson, 10 S. W. 245, the Supreme Court held
that lands set apart by the state for the contractor, as
payment for the construction of the Capitol of Texas, to be
conveyed to him when earned in the progress of the work, is
not subject to taxation, as land held under a contract for
purchase from the state.

Furthermore, the state has never held itself sub-
ject to taxation except by special enactment. This is proved
by the fact that when the state decided that the land belong-

Honorable J. W. Calhoun, Page 7

ing to the Permanent University Fund should be subject to taxation for county purposes, it was necessary to adopt Article VII, Section 16 (a) of the Constitution. The land in question is not subject to taxation under the above amendment because it is not a part of the Permanent University Fund, and it did not belong to the University at the time said amendment went into effect.

Nothing in this opinion is to be construed as holding that the state does not have authority to tax its own property.

We are of the opinion that the property conveyed to the Board of Regents for the use and benefit of the University of Texas by George Beggs and Mike Hogg is property belonging to the state and is therefore exempt from taxation.

We sincerely trust that the foregoing fully answers your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Richard H. Cooke
Richard H. Cooke
Assistant

RHC:GO

CC: Honorable Dan W. Jackson
District Attorney
Houston, Texas

APPROVED FEB 29, 1940

Gerald C. Mann
ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN